[No. 12729-0-III.  Division Three.  June 20, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. D.T.M., *Appellant*.

*James J. Barlow, Barlow and Associates*, for appellant.
*John R. Henry, Prosecuting Attorney*, for respondent.

SCHULTHEIS, J. — D.T.M. moved to withdraw his *Alford*[1] plea to first-degree child molestation after the victim recanted her allegations. The court denied the motion and

---

[1]*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970) holds that a defendant who professes innocence may plead guilty to limit his penalty as long as there is a factual basis for the plea.

sentenced him within the standard range to 51 months. He appeals, contending the court must grant a new trial when the only factual basis for the conviction arises out of the testimony of a witness who later recants. We reverse and remand for further proceedings.

On September 17, 1991, D.T.M.'s nine and one-half-year-old stepdaughter M.J. told a neighbor her stepfather had tried to rape her. The police and the Department of Social and Health Services (DSHS) investigated, and D.T.M. was charged the following day with first degree child rape. The prosecutor later added a second count, first-degree child molestation.

On January 15, 1992, the trial court held a hearing to determine the child's competency as a witness and the admissibility of hearsay statements made by her to the neighbor, her mother, the police chief, a DSHS social worker, physician John Harris, and State employed psychologist Gregory Wilson. The court ruled the child was competent to testify and her statements to these individuals were admissible. The court also granted the State's motion to have the child testify by closed circuit TV.

On March 10, the case was called for trial and jury selection commenced. On March 11, the court accepted D.T.M.'s *Alford* plea to the charge of first-degree child molestation, entered to take advantage of the State's agreement to dismiss the charge of first-degree rape.

On March 15, the child told her mother and a friend of her mother's that she had made up the allegations against her stepfather. On March 17, they told D.T.M.'s attorney and a paralegal in the law office that M.J. had fabricated the sexual abuse allegations against her stepfather because she was mad at him and wanted to get him in trouble. She said she had gotten the idea of accusing him of rape from a TV movie.

On May 14, D.T.M. moved to withdraw his *Alford* plea under CrR 4.2(f), to correct a manifest injustice, and under CrR 7.8(b), on the basis of newly discovered evidence. The

court found the requirements of CrR 4.2(d) for entering a plea of guilty had been met: that the defendant consulted effectively with counsel, and knowingly, voluntarily, and intelligently chose to enter the guilty plea to take advantage of plea negotiations. The court noted the possibility of recantation had been raised at the hearsay hearing. Finally, the court concluded D.T.M. had not met his burden of demonstrating a manifest injustice because the "newly discovered evidence" in the form of recantations did not meet the criteria for granting a new trial set forth in *State v. Williams*, 96 Wn.2d 215, 634 P.2d 868 (1981). The court denied the motion; D.T.M. appeals.

■ Withdrawal of a guilty plea is governed by CrR 4.2(f), which provides:

> The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. . .. If the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8.

The motion in this case was made after judgment. CrR 7.8(b)(2) permits the court to relieve a party from a final judgment for newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.6. The court may not grant a defendant a new trial based upon newly discovered evidence unless he demonstrates the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching. *Williams*, at 222-23.

D.T.M. contends withdrawal of his guilty plea is necessary to correct a manifest injustice because his conviction rests solely on the testimony of the now recanting witness. He argues there is no longer any factual basis for either his guilty plea or the conviction; thus, he should be allowed to withdraw the plea. *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *State v. Rolax*, 84 Wn.2d 836, 838, 529 P.2d 1078 (1974), *overruled on*

*other grounds in Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975); *State v. Powell*, 51 Wash. 372, 98 P. 741 (1909); *State v. York*, 41 Wn. App. 538, 704 P.2d 1252 (1985). He also contends the child's recantation meets the criteria for granting a new trial based upon newly discovered evidence.

██ ██ A defendant considering an *Alford* plea undertakes a risk-benefit analysis. After considering the quantity and quality of the evidence against him, and acknowledging the likelihood of conviction if he goes to trial, he agrees to plead guilty despite his protestation of innocence to take advantage of plea bargaining. *Duran v. Superior Court*, 162 Ariz. 206, 782 P.2d 324, 326 (Ariz. Ct. App. 1989). Because the defendant professes innocence, the court must be particularly careful to establish a factual basis for the plea. Ordinarily, when a defendant pleads guilty, the factual basis for the offense is provided at least in part by the defendant's own admissions. With an *Alford* plea, however, the court must establish an entirely independent factual basis for the guilty plea, a basis which substitutes for an admission of guilt. Curtis J. Shipley, *The Alford Plea: A Necessary but Unpredictable Tool for the Criminal Defendant*, 72 Iowa L. Rev. 1063, 1070-71 (1987).

██ Here, M.J.'s statements provided the independent factual basis which substituted for an admission of guilt by D.T.M. The physical and psychological examinations undertaken by Doctors Harris and Wilson corroborated M.J.'s assertions of sexual abuse, but the child and her mother both acknowledged she had been the victim of sexual assaults by at least two individuals before D.T.M. became a part of the family. Thus, even though there was independent evidence that M.J. had been sexually abused, there was no independent evidence that D.T.M. was the offender. Without M.J.'s statements, D.T.M.'s guilty plea and conviction both lack factual support. When a defendant has been convicted *solely* on the testimony of a now recanting witness, it is an abuse of discretion not to grant a new trial. *Rolax*, at 838; *York*, at 543-44.

Moreover, M.J.'s out-of-court recantation, if true, meets all five criteria of *State v. Williams, supra. See York*, at 544. Since her allegations provided the sole factual basis for D.T.M.'s conviction, her direct recantation would probably change the outcome of a new trial. Given the consistency of M.J.'s statements throughout the investigation and pretrial proceedings, her recantation could not have been discovered before trial with the exercise of due diligence. At the pretrial hearing Dr. Wilson discussed the possibility of recantation by child sex abuse victims in general terms and testified M.J. was under pressure from her mother to recant, but had not done so. That the issue was raised before trial does not mean that D.T.M. did not act with due diligence, or that he could have precipitated the recantation by acting differently. The evidence, if true, is clearly material and is not merely cumulative or impeaching.

■ Although Washington courts have required a new trial when an essential witness recants under oath in open court, they have not always done so when the witness recants by affidavit. *State v. Landon*, 69 Wn. App. 83, 92, 848 P.2d 724 (1993). The court's decision here was based on affidavits and oral argument. Under the circumstances, and considering D.T.M.'s persistent assertions of innocence,[2] we believe the court should have held a hearing to evaluate M.J.'s credibility. If she were to adhere to the facts in her recantation while under oath in open court and subject to cross examination, *Rolax, Powell*, and *York* would require the court to permit D.T.M. to withdraw his guilty plea and proceed to trial. *See Landon*, at 93.

We reverse and remand for further proceedings consistent with this opinion.

---

[2] D.T.M.'s supplemental pro se brief raises no additional issues, but continues to maintain his innocence.

THOMPSON, C.J, and SWEENEY, J., concur.